[Civ. No. 14692.  First Dist., Div. One.  Mar. 21, 1951.]

Estate of MARGUERITE HARRISON, Deceased.  WILLIS COOK, Appellant, v. NORMAN L. SCHEINMAN, as Administrator, etc., Respondent.

Ernest Spagnoli for Appellant.

Rea, Jacka & Frasse, Amici Curiae on behalf of Respondent.

BRAY, J.—Appeal from (1) decree of settlement of second and final account and of distribution; (2) order denying motion to vacate such decree.

The order denying the motion to vacate is not appealable. (*Lutz* v. *Christy*, 67 Cal. 457 [8 P. 39].) This decision was based on section 963, subdivision 3, of the Code of Civil Procedure. In 1931 section 1240 of the Probate Code was enacted providing for appeals in probate. It does not provide an appeal from a decree of this type, so the rule is the same. (*Linstead* v. *Superior Court*, 17 Cal.App.2d 9 [61 P.2d 355]; *Gladding* v. *Superior Court*, 7 Cal.2d 408 [60 P.2d 857]; see, also, *Estate of Lopez*, 79 Cal.App.2d 399 [179 P.2d 621].)

### QUESTIONS PRESENTED

1. Is a residuary legatee in an estate in which there is no residue a "person interested in the estate" under section 927 of the Probate Code? 2. Did the court abuse its discretion in refusing to continue the hearing of the final account and petition for distribution? 3. Did the court err in denying the objections to the account?

## FACTS

Appellant Willis Cook is a residuary legatee under decedent's will. He was named executor and from 1943 to 1946 acted as such. Due to shortages in his accounts he was removed. Norman L. Scheinman was appointed administrator with the will annexed, and recovered a judgment of $29,000 against Cook for the estate. Cook was convicted of embezzling some $11,569.32 of this amount and was imprisoned at San Quentin. On February 21, 1950, Scheinman filed his second and final account as administrator and petition for distribution, which was set for hearing for March 10. One James Foley was the attorney for the executor during Cook's administration of the estate, and notice of the hearing was served upon him. Foley mailed the notice to Cook at San Quentin, and it was received by him about the 1st or 2d of March. About that time Cook was released (his brief says on or about March 1st). Cook in a letter requested Foley to act for him but the latter declined (the date of this does not appear). On March 9th, Cook consulted his present attorney who prepared for him "Exceptions and Objections to Second and Final Account, Report and Petition for Distribution," also a letter to the superior court requesting a continuance of the hearing set for March 10th "for several weeks," for the reason that counsel was not familiar with the account and would be unable to be in court on that day. It also stated: "Mr. Cook, just recently released from San Quentin, is also unable to proceed . . ."

On the morning of the 10th, Cook filed the exceptions in the clerk's office and presented the letter to the judge in chambers. The latter suggested that it be presented to him in open court. When the matter was called, Cook was present in court, requesting a continuance. Whether the letter was again presented is not clear. Cook, in the hearing on the motion to vacate, swears that it was; the attorney for the administrator swears that it was not; and the judge does not recall. (The hearing was not reported.) At the hearing of the account Cook was not sworn, but upon questioning from the bench, discussed at least one of the objections in his exceptions to the account. The court settled the account as presented, expressly disallowing appellant's objections, and ordered the estate on hand to be distributed under the terms of the will to the three legatees. It appears that the assets of the estate were not sufficient to satisfy these legacies. Appellant does not question the distribution as made.

Thereafter appellant moved to vacate the order settling the account and of distribution on the ground that his request for continuance of the hearing was not granted and because the court had refused to order the administrator to recover certain moneys from the bank. This motion was denied. Before notice of appeal was filed the administrator was discharged. The attorneys who had represented the administrator appear on this appeal as amici curiae.

1. *Is Appellant an Interested Person?*

■ Section 927 of the Probate Code provides: "Any person interested in the estate may appear and file written exceptions to the account . . ." Respondent contends that appellant is not such person for the reason that, assuming appellant's objections to the account are sustained, there still would not be sufficient money to pay the specific legacies. Therefore, there would be no residue for appellant to take. Appellant's only claim, then, to being an interested person, can be that although no assets may be presently distributable to him, the possibility of his realizing on his bequest, from after-acquired property, if any, is enhanced by any saving to the estate his objections may effect. In *Estate of Casner,* 1 Cal.App. 145 [81 P. 991], the court said that the decree of the probate court settling an account will not be disturbed on appeal "unless the appellants show that *their* interests in the estate have suffered in some way by reason of the findings or decree . . ." There appellants were complaining that the executor had not collected interest on certain debts due the estate, which, if collected, would have gone to the widow who was not complaining. In *Estate of Brown,* 24 Cal.App.2d 573 [75 P.2d 658], the appellant had under the will "only a future contingent interest in the estate" (p. 574) (the exact nature of this interest does not appear). The court said, referring to section 927: ". . . the language used therein appears to be sufficiently broad to include within its scope any person named as a beneficiary in the will of the deceased." (P. 575.) While in our case the possibility of there being after-discovered property is probably remote, the law should be extremely liberal in not depriving of his day in court a person whose actual interest might possibly attach in the future. Particularly is this so in view of the statement in *Garwood* v. *Garwood,* 29 Cal. 514, 520: ". . . any doubt as to the question of interest ought to be resolved in favor of the petitioner; and however remote or contingent his interest may be, or, in other words, if he has the appearance of an

interest, his right to contest ought not to be denied." Being named in the will, appellant should be entitled to his voice in the proceedings.

### 2. *No Error in Refusing Continuance*

█ The reasons given in the letter requesting the continuance were unfamiliarity of counsel with the account, his inability to be in court on March 10th, and that Cook "is also unable to proceed." No affidavits were filed, and no showing made as to why counsel was unfamiliar with the account, and particularly why he could not be in court that day; nor why Cook would be unable to proceed. No showing for continuance as required by section 595 of the Code of Civil Procedure was attempted. Cook had been the executor of the estate from 1943 to 1946, and, although confined later in prison, must have had some familiarity with the affairs of the estate. Formal objections to the account were filed. While these objections stated that the three objections he was making therein were "amongst others that he will supply later and is not able at this time to supply" because he had recently been released from prison, Cook testified on the motion to vacate that his principal objection to the account, at the hearing of the account and then, was the item of $11,569 which he contended the administrator should recover from the bank. (It will be considered later.)

In his brief, appellant claims that he desired an opportunity to apply to the court for executor's fees and fees for his attorney. Whether an executor who embezzles from the estate is entitled to executor's fees might be an interesting question. Moreover, the record fails to show that the executor's former attorney was seeking fees. He knew of the hearing of the account. However, so far as we can determine from the record the attention of the probate court was never called to this matter of fees. Again, the time to which a continuance was requested was delightfully vague—"for several weeks."

█ It is well settled that the granting or refusing of a continuance is a matter which rests largely, if not wholly, in the discretion of the trial court, and that court's action will not be set aside by a reviewing court unless it is clearly shown to have been abused. (*Jones* v. *Green*, 74 Cal.App.2d 223 [168 P.2d 418].) We see no such abuse here.

### 3. *Objections to the Account*

One of the factors in determining abuse in denying a continuance is the question of whether appellant's objections

were meritorious. (See *Jones* v. *Green, supra,* p. 230.)

The court here properly denied the objections. The one on which appellant principally relies deals with a claimed payment by Cook when he was executor to the Anglo-California National Bank of the sum of $11,569.32. There is no evidence in the record concerning this item. Coupling together his statements in his objections and in his brief, it appears that appellant contends that when executor, he instructed a title company to pay to the bank from estate moneys in its hands, that amount in payment of appellant's personal promissory note. This note was secured by a chattel mortgage on estate cattle which had been branded with Cook's personal cattle brand. While Cook contends that the money evidenced by the note was used by him for the conduct of a ranch belonging to the estate, it appears that his embezzlement conviction was based on this item. He now contends that the administrator should compel the bank to restore this sum to the estate. Obviously, if the money was used, as he claims, to pay an estate indebtedness, there is no reason why the money should be repaid to the estate. Respondent, without giving any detail of the facts, contends that this money is not legally recoverable from the bank; that it may be barred by the statutes of limitation, and that appellant has failed to point out how it is legally recoverable. Appellant has mentioned no theory upon which this money is legally recoverable. As there is no evidence before us as to just what the true situation is, we likewise are unable to determine that the court's action in refusing to require the administrator to proceed against the bank is erroneous. We might point out, however, that the legatees other than appellant, none of whom received their full legacies, are not complaining. Moreover, appellant's reason for demanding a recovery from the bank is that such a recovery would reduce the $29,000 judgment which the estate holds against him *pro tanto.* Just why the court should have ordered the estate to be kept open and the administrator to sue the bank for moneys knowingly paid it by appellant, in fraud of the estate, solely to reduce the judgment against appellant which the estate obtained because of that fraud, is not clear. As the others interested in the estate are not complaining, appellant is in no position to complain.

In his brief, appellant states that the only remedy now open to him is for him to sue the bank (if the parole board will

permit). Such a suit ought to be quite interesting—one who steals money, suing to recover for himself, the stolen money.

### EXTRAORDINARY COMPENSATION

The other items objected to are allowances to the administrator of $9,000 and to the attorney of $4,000—for extraordinary services. The other legatees requested the court in writing to allow these sums. There is nothing in the record before us from which we can determine whether or not they are reasonable. ■ It was the duty of the court, even without objections by appellant, to allow as extraordinary fees only such sums as are reasonable. ■ In the absence of a showing to the contrary, we must assume that the probate court properly determined the matter. It is reasonable to assume, too, that as a result of appellant's defalcation as executor, both the administrator and the attorneys were required to perform extraordinary services. Again, we probably can assume the reasonableness of the charges from the fact that they actually came out of the shares of the legatees who approved them. In his brief, appellant does not contend that the evidence did not support the court's determination on this subject.

It is interesting to note that respondent claims that even if the moneys paid the bank and the amounts allowed for extraordinary services were returned to the estate, they still would not be sufficient to pay the total of the specific legacies. As the record does not show how much the amounts distributed to the legatees fall short of the amounts bequeathed them, we have no way of verifying this.

The order and decree of settlement of the second and final account and petition for distribution is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.